# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re:

STEVEN M. MOEHLING,

     Debtor.

_____

STEVEN M. MOEHLING,

     Appellant,

v.

SELECT PORTFOLIO SERVICING, INC.,

     Appellee.

_____

BAP No. SC-26-1081

Bankr. No. 19-03857-CL13

**APPELLANT'S REPLY BRIEF**

**TABLE OF CONTENTS**

I.     INTRODUCTION……………………………………….…...……1

II.    THE BANKRUPTCY COURT ERRONEOUSLY
       TREATED THE MAY 2020 BREACH AS DISPOSITIVE ..……......2-3

III.   THE BANKRUPTCY COURT NARROWED THE INQUIRY
       TO AN ALLEGED MAY 2020 PAYMENT DEFICIENCY AND
       NEVER RETURNED TO THE DISPUTE PRESENTED..................4-5

IV.    THE STIPULATION PERIOD CANNOT BE RECONCILED
       WITH APPELLEE'S LATER RECONSTRUCTION........................5-7

V.     SPS NEVER IDENTIFIED THE SPECIFIC
       INSTALLMENT ALLEGEDLY REMAINING UNPAID …............7-9

VI.    ECF 71 WAS NOT THE "FULL ACCOUNTING"
       ACCEPTED BY THE BANKRUPTCY COURT…………..…………9-11

VII.   THE BANKRUPTCY COURT COULD NOT INVOKE § 524(i)'S
       SAFE HARBOR WITHOUT FIRST RESOLVING THE VALIDITY
       OF THE ASSERTED DELINQUENCY….……………...……….…..11-14

VIII.  REVERSAL, NOT REMAND, IS THE APPROPRIATE
       REMEDY………………………………………………………..14-15

IX.    CONCLUSION…………………………………………………..15

**TABLE OF AUTHORITIES**

**<u>Cases</u>**

*In re Valdellon, BAP No. EC-24-1086* (9th Cir. BAP Dec. 20, 2024),

aff'd sub nom. *PHH Mortg. Corp. v. Valdellon, No. 25-538*

(9th Cir. Apr. 20, 2026) ................................................................ [Pages 3, 6, 12]

*In re Tollios*, 491 B.R. 886 (Bankr. N.D. Ill. 2013) .................................... [Page 12]

**<u>Statutes</u>**

11 U.S.C. § 524(i) ............................................................................[1, 4, 6, 11-14]

**<u>Rules</u>**

Fed. R. Bankr. P. 8015……. ........................................................... [Page 16]

Fed. R. Bankr. P. 8015(a)-1 ...................................................... [Page 16]

Fed. R. Bankr. P. 3002.1 …………….………………….……….....[1, 4, 7, 11, 13-15]

Fed. R. Bankr. P. 3002.1(g)……..……………..….………….…… [Page 4, 7]

Fed. R. Bankr. P. 3002.1(h)………………………….……..…….. [Page 12. 13]

**Record Citations (Excerpts from the Case Docket)………………**

ECF No. 31: Modified Chapter 13 Plan ...................................................... [Page 3]

ECF No. 37: Motion to Modify Plan............................................................ [Page 3]

ECF No. 48: Appellee Notice of Final Cure  (4100R) …………………[Page 6, 8]

ECF No. 70: Post Hearing Minute Order……………………….……...[Page 4, 7-10]

ECF No. 71: Larsen Declaration……………...............……[Page 1-3, 5-6, 8-12]

ECF No. 75: Final Order Under Appeal ................................................. [1, 2, 5]

**<u>Supporting Record Materials</u>**

January 26, 2026, Hearing Transcripts (ER 0126- 0136)…………...….....[Page 4, 9]

Exhibit C: ……………………………………………….…….. [Page 1, 5, 7, 10]

Exhibit I: May 2020 Mortgage Statement (ER 0081)………...................... [Page 6]

Exhibit J:

- December 2020 Mortgage Statement (ER 0086-0088)…………….… [Page 6]

- February 2021 Mortgage Statement – (ER 0090)…………………. [Pages 2]

Exhibit D – Resolution Letters (ER 0091-ER 0093)………………..,,.[Pages 6, 8]

## I. INTRODUCTION

Appellee's Response fails to cure the structural defects identified in the Opening Brief. Instead, Appellee assumes the validity of its disputed delinquency while leaving the record gaps required to establish it entirely unresolved. Appellee contends that a brief payment variance at the outset of the May 2020 Stipulation period created a permanent default through discharge, that ECF No. 71 constitutes a "full accounting," and that the § 524(i) safe harbor immunizes it from liability. The Bankruptcy Court accepted these identical, flawed premises in denying Appellant's Motion (ECF No. 75).

The Opening Brief demonstrated why these premises cannot be reconciled with the governing Stipulation, the FRBP 3002.1 framework, historical servicing records, Exhibit C, the absence of any Declaration of Non-Cure, and Appellee's inability to identify which installment allegedly remains unpaid. Appellee's Response fails to engage these issues. Rather, it relies on a post-discharge ledger reconstruction while ignoring the pervasive account-administration irregularities that triggered the Motion in the first instance.

Accordingly, the central issue on appeal is not whether a servicer can isolate a historical payment discrepancy within a litigation ledger. The issue is whether that discrepancy permitted the Bankruptcy Court to disregard years of subsequent, compliant plan administration and accept Appellee's post-discharge accounting rewrite as dispositive. Because this error infected both the safe-harbor analysis and the ultimate ruling below, it requires reversal.

**II. THE BANKRUPTCY COURT ERRONEOUSLY TREATED THE MAY 2020 BREACH AS DISPOSITIVE**

The central error underlying the ruling below was not merely the Bankruptcy Court's finding that Appellant failed to timely remit the full May 1, 2020 payment. Rather, the Court treated that timing breach as dispositive of the entire dispute. **Once the Court concluded that a breach had occurred, it effectively ended the inquiry and accepted Appellee's continuing-default theory without determining whether the account's subsequent administration supported that conclusion.**

The record reflects that SPS received the first May 2020 payment on May 1, 2020, notwithstanding SPS's later decision to post that payment on May 4, 2020, which the Court subsequently characterized as a partial payment "***three days late***." Appellant thereafter remitted the remaining funds on May 18, 2020, fully satisfying May's ongoing contractual payment and the first scheduled arrears payment under the Stipulation. SPS applied those funds pursuant to its own suspense procedures and thereafter continued administering the account throughout the remainder of the Chapter 13 case. (ECF No. 71 at 8 ⁋ 19, ER 0065), The Court nevertheless treated the May 2020 breach as establishing that Appellant "***generally remained in default***" through discharge (ECF No. 75 at 5). In doing so, the Court did not reconcile that conclusion with SPS's subsequent treatment of the account, including the accumulation and application of suspense funds, contemporaneous mortgage statements reflecting current status, the February 2021 statement (ER 0090) reflecting no past-due amount, the absence of any Declaration of Non-Cure, years without preservation of an alleged continuing default, Trustee administration of the Plan, or the records identified by Appellant throughout the proceedings. Nor did

the Court explain how those records supported its conclusion that Appellant remained generally in default through discharge.

The Court's reliance upon the 2023 Modified Plan (ECF No. 37) further illustrates the problem. The modification arose from changed household circumstances addressing plan feasibility, not from any declared or preserved pre- or post-petition default. As the Chapter 13 Trustee explicitly stated in ECF No. 31: "***Debtor's existing plan payments are current and plan can be administered with the existing plan payments***" Yet the ruling never reconciled that assessment with SPS's later contention that Appellant had generally remained in default throughout the plan period. Rather than determining whether SPS's continuing-default theory could be reconciled with the intervening account history, the ruling accepted ECF No. 71's reconstruction and viewed later events through that assumption.

Accordingly, the issue presented by this appeal is not whether a technical breach occurred at the outset of the Stipulation period. The issue is whether that breach, standing alone, permitted the Court to disregard the subsequent account administration, payment-application issues, and delinquency disputes that gave rise to Appellant's Motion in ECF No. 54 and accept SPS's post-discharge delinquency narrative as dispositive. Appellant respectfully submits that it did not. Valdellon further illustrates the error by recognizing that Chapter 13 payments must be afforded the effect required by the governing framework.

## III. THE BANKRUPTCY COURT NARROWED THE INQUIRY TO AN ALLEGED MAY 2020 PAYMENT DEFICIENCY AND NEVER RETURNED TO THE DISPUTE PRESENTED

Appellee's Response continues to frame this dispute as though the existence of

an alleged payment deficiency during the May 2020 Stipulation period resolved the issues presented below. The record reflects otherwise.

Appellant's Motion did not ask the Bankruptcy Court to determine merely whether SPS could identify a payment discrepancy within a later reconstruction. Rather, the Motion challenged whether SPS properly credited and applied Plan-related payments, whether the delinquency first asserted through the March 11, 2024 Rule 3002.1(g) Response could be reconciled with SPS's own account records and administration of the account, and whether SPS's conduct complied with the requirements of § 524(i), the court-approved Stipulation, and Rule 3002.1.

The Bankruptcy Court nevertheless narrowed the inquiry during the January 26, 2026 hearing, stating: ***"so we need to know were any payments missed, and that's as far as this inquiry needs to go. I mean, it might be satisfying to know the other things, but I don't know that we go beyond that."*** (Jan. 26, 2026 Tr. 10:2-5, ER 0135). The Court thereafter directed Appellee to identify ***"which, if any, payments"*** had been missed (ECF No. 70).

That narrowing of the inquiry materially altered the dispute before the Court. The question was no longer whether Appellee's post-discharge delinquency narrative could be reconciled with the manner in which the account had actually been administered. Instead, the inquiry became whether SPS could identify a historical payment deficiency and connect it to the delinquency asserted after discharge.

**This appeal does not require the Panel to resolve every dispute arising from the account history, including questions concerning suspense accounting, trustee-payment allocation, diversion of funds, conflicting**

**servicing records, Exhibit C, Resolution Letter inconsistencies, the evolution of the asserted delinquency, or resulting post-discharge enforcement activity. Those issues illustrate why Appellant disputed the validity of the asserted delinquency, but Appellant's Motion did not require the Bankruptcy Court to finally resolve each of them. The narrower question presented was whether SPS properly credited and applied Plan-related payments in accordance with the governing bankruptcy framework and whether the asserted delinquency relied upon for post-discharge enforcement had been established.** Instead, the Bankruptcy Court narrowed the inquiry to whether a payment discrepancy could be identified at the outset of the Stipulation period and treated that determination as dispositive.

## IV. THE STIPULATION PERIOD CANNOT BE RECONCILED WITH APPELLEE'S LATER RECONSTRUCTION

Appellant's challenge has consistently focused upon whether the delinquency first asserted after Plan completion can be reconciled with the manner in which SPS actually administered the account during the Chapter 13 case.

The asserted delinquency ultimately accepted by the Bankruptcy Court arose from a post-discharge ledger (ECF No. 71) that manufactured a terminal default narrative by retroactively reaching back to August 2019. By capturing obsolete, pre-stipulation balances and carrying them through the contractually mandated reset window, Appellee fabricated a continuous "days late" timeline that the Bankruptcy Court uncritically adopted on page 5 of its Order (ECF No. 75). Yet, the account was never operationally administered under this retroactively carried-over framework during the Chapter 13 case. It was administered through the confirmed Plan, the April 2020 Stipulation (ER 0007-0010), contemporaneous servicing records, and debtor-facing mortgage statements.

Specifically, Appellee's own corporate Mortgage Statement issued to Appellant on May 15, 2020, explicitly established the post-petition due date as 05/01/2020 (ER 0081), fully acknowledging the Stipulation's clean reset terms. Yet, the litigation ledger rewrote this history—retroactively dragging Appellant's May 19, 2020 payment backward to a fictional due date of December 1, 2019, to manufacture a "170 Days Late" delinquency (ECF No. 71, Pg. 4). Appellee's Response completely fails to reconcile the direct conflict between the "Life 1" reality communicated during the case and the "Life 2" revisionist ledger manufactured post-discharge to establish an artificial safe harbor under 11 U.S.C. § 524(i) and *In re Valdellon*.

This litigation ledger is further undermined by Appellee's own sworn tracking rules. While Appellee admitted under oath that partial payments were held in suspense until a full installment accumulated (ECF No. 71, Pg. 8), it systematically stripped Appellant's timely payments of their plan-directed "curative effect." The June 2020 payment history itself fails to reflect the "missed payment" later claimed in corporate Resolution Letters (ER 0071-72), while the massive accumulation of unapplied funds (ER 0086-88) flatly conflicts with the suspense methodology now presented as authoritative.

The same period also contains account activity that Appellee's reconstruction never adequately explains. On November 23, 2020, SPS applied three payments that do not appear in the 4100R and whose source remains disputed. (ECF No. 48). Appellant consistently argued that those applications demonstrate the use of post-petition funds intended for the Stipulation cure structure toward pre-petition obligations. Appellee's Response does not engage that issue, nor does it reconcile those applications with the account history later advanced through ECF No. 71. The Stipulation period concluded in a manner equally inconsistent

with the later reconstruction. By February 2021, SPS's own mortgage statement reflected a March 1, 2021 due date and no past-due amount. Thereafter, years passed without any Declaration of Non-Cure, assertion of a continuing default, or administration of the account consistent with the delinquency narrative later advanced after discharge. Multiple Rule 3002.1 notices were filed during the life of the case, yet none identified any default.

The same pattern continued through confirmation of the Modified Plan, Trustee administration, completion of Trustee cure payments, and Exhibit C, which reflected Plan completion only days before SPS asserted a delinquency for the first time through its March 11, 2024 Rule 3002.1(g) Response. Yet Appellee's Response never explains how an account administered in that manner became the continuously delinquent account later described through post-plan and post-discharge reconstruction.

## V. SPS NEVER IDENTIFIED THE SPECIFIC INSTALLMENT ALLEGEDLY REMAINING UNPAID

The question of which payment allegedly remained unpaid did not originate with ECF No. 70. From Appellant's April 4, 2024 dispute forward, Appellant repeatedly requested that SPS identify the specific installment or installments allegedly giving rise to the delinquency first asserted through the March 11, 2024 Rule 3002.1(g) Response. Those requests continued through multiple Resolution Letters, the post-discharge dispute process, the Notice of Default, the proceedings below, and this appeal. Despite those repeated requests, SPS never identified the operative installment upon which its continuing-default narrative ultimately depended.

The issue became central to the proceedings below when the Bankruptcy Court directed SPS to identify "which, if any, payments" had been missed. ECF No. 70. That directive reflected the same question Appellant had been raising throughout the dispute process. The Court did not ask SPS merely to provide an accounting theory, cumulative-aging analysis, delinquency calculation, or reconstruction narrative. The Court asked SPS to identify the payment or payments allegedly missed.

ECF No. 71 did not answer that question. Rather than identifying a specific installment allegedly remaining unpaid, SPS submitted a reconstruction consisting of delinquency calculations, days-late measurements, payment histories, suspense activity, and aggregate balances from which delinquency was inferred. The reconstruction purported to explain why SPS believed a delinquency existed, but it never identified the actual installment allegedly remaining unpaid and omitted significant underlying transaction-level detail necessary to independently verify and reconcile the asserted delinquency.

That distinction is significant. A delinquency amount is not an installment. A cure demand is not an installment. A cumulative-aging calculation is not an installment. Nor does the existence of a reconstruction establish which payment allegedly remained unpaid. Yet SPS's delinquency narrative evolved from the $6,021.17 delinquency asserted in the 4100R, to the $3,731.90 cure demand contained in the Notice of Default, to multiple explanations centered upon an alleged "missed June 2020 Stipulation payment" of $913.55, without ever identifying the specific installment connecting those theories. (Ex. D, ER 0071-72), (ECF No. 48).

More than two years after the 4100R, SPS still has not identified the installment allegedly remaining unpaid. The omission persists through seven Resolution

Letters, foreclosure-related demands, ECF No. 71, the proceedings below, and Appellee's Response. The question presented by ECF No. 70 therefore remains unanswered.

The significance of that failure extends beyond a missing detail in the accounting. The asserted delinquency accepted by the Bankruptcy Court depends upon the existence of an unpaid obligation, yet SPS has never identified the installment giving rise to that obligation. Instead, SPS repeatedly returns to the conclusion that a delinquency exists while leaving unanswered the very question the Bankruptcy Court directed it to address. That omission was compounded by additional deficiencies in ECF No. 71 itself.

## VI. ECF 71 WAS NOT THE "FULL ACCOUNTING" ACCEPTED BY THE BANKRUPTCY COURT

The Bankruptcy Court ultimately accepted ECF No. 71 as a "***full accounting***" and relied upon it in concluding that Appellant remained delinquent through discharge, **despite being informed that twelve (12) plan payments were systematically missing from the Form 4100R reconciliation framework (Hearing Tr. 2:20–3:6, ER 0127–0128). Furthermore, the ledger provided by Appellee in ECF No. 71-1 (Exhibit A) continues to entirely exclude the pre-petition ledger history, nor did the Court address the missing payments upon acceptance of ECF No. 71. An accounting that omits both a full year of plan disbursements, where transactions identified in the Opening Brief demonstrated the comingling of those funds without the ability to trace their movement, is anything but a 'full accounting.' While Appellee's Response treats the completeness of ECF No. 71 as though it were undisputed, the record explicitly reflects otherwise. (Opening Br. at 12-13).**

ECF No. 71 was submitted in response to ECF No. 70, which directed SPS to identify "which, if any, payments" had been missed. Yet ECF No. 71 did not merely attempt to answer that question. It presented a reconstruction of account activity spanning years of Chapter 13 administration and asked the Court to accept that reconstruction as establishing a continuing default through discharge. Having assumed that broader role, ECF No. 71 was required to reconcile the reconstruction with the underlying account history upon which it purportedly relied but did not do so.

Rather than providing the transaction-level information necessary to independently verify the asserted delinquency, ECF No.71 relied upon summary-level calculations, payment histories, and days-late measurements from which delinquency was inferred. The reconstruction was never reconciled with SPS's servicing records, including the May 2020 reset, current mortgage statements, suspense activity, Exhibit C, and other account-history information identified throughout the proceedings. Appellee's Response does not resolve those conflicts.

But a reconstruction cannot serve as its own proof. The validity of the reconstruction depended upon whether it could be tested against the underlying account history and records from which it was derived.

The resulting problem is evident throughout the record. The reconstruction purports to establish a continuing default through discharge, yet it never reconciles the changing delinquency figures later asserted through the 4100R, Resolution Letters, and Notice of Default. It never reconciles the treatment of funds reflected during the Stipulation period. Nor does it reconcile the materially different account history reflected by SPS's own records. Those

omissions are not collateral issues. They go directly to the reliability of the reconstruction itself.

The Bankruptcy Court nevertheless accepted ECF No. 71 as a "full accounting." Appellee's Response adopts the same assumption on appeal. Yet neither explains how a reconstruction that omits significant underlying account history, fails to identify the installment allegedly remaining unpaid, and leaves multiple material account-history conflicts unresolved can properly be characterized as a full accounting. The issue is not whether SPS provided additional information in ECF No, 71. The issue is whether ECF No. 71 actually reconciled the asserted delinquency with the account history upon which it purportedly rests. It did not.

## VII. THE BANKRUPTCY COURT COULD NOT INVOKE § 524(i)'S SAFE HARBOR WITHOUT FIRST RESOLVING THE VALIDITY OF THE ASSERTED DELINQUENCY

Appellee's § 524(i) argument improperly presupposes the validity of its disputed delinquency. As established in the Opening Brief, applying the safe harbor required reconciling Appellee's post-hoc reconstruction with the governing Stipulation, the FRBP 3002.1 framework, and the historical servicing records showing how the account was operationally administered. (Opening Br. at 11–15).

The Bankruptcy Court never resolved these disputes. Instead, the court short-circuited the inquiry by checking whether any single payment had been missed at the outset of the Stipulation period, adopting Appellee's reconstruction, and proceeding directly to a safe-harbor analysis. In doing so, the court treated a structural discrepancy within Appellee's own ledger as sufficient to establish an

ongoing default through discharge—assuming the validity of the delinquency rather than determining it.

The principles in *In re Tollios*, 491 B.R. 886, 888–93 (Bankr. N.D. Ill. 2013) reinforce that alleged defaults must be identified and administered during plan performance, not manufactured through post-hoc litigation ledgers. Here, the alleged default never surfaced during years of plan performance. It emerged for the first time in Appellee's March 11, 2024 Form 4100-R Response, mutated through conflicting corporate Resolution Letters, and was retroactively expanded via ECF No. 71.

The Ninth Circuit's decision in *In re Valdellon* (9th Cir. Apr. 20, 2026) confirms that the inquiry cannot end with a binary delinquency check. *Valdellon* recognizes that properly "crediting" Chapter 13 payments requires affording funds their contractually and legally mandated effect under the bankruptcy framework.

The Bankruptcy Court's statement at the January 26, 2026 hearing highlights its legal error. By narrowing the scope strictly to whether a payment was missed and declaring "*that's as far as this inquiry needs to go,*" the court ignored the core requirement of *Valdellon*. The ruling below improperly accepted a "days late" narrative anchored entirely to pre-Stipulation 2019 due dates, without determining whether subsequent administration supported carrying that ancient default through a court-ordered reset and discharge. Because the underlying math remained broken and uncredited under the bankruptcy framework, applying the § 524(i) safe harbor was premature. (Opening Br. at 15–16).

Appellee's alternative assertion that Appellant's failure to file a motion within FRBP 3002.1(h)'s 21-day window forecloses this appeal fundamentally

misconstrues the rule. Courts consistently recognize that FRBP 3002.1(h) is a permissive procedural mechanism, not a jurisdictional bar or statute of limitations that immunizes a servicer's accounting errors from judicial review under § 524(i).

**Furthermore, Appellee's argument ignores the factual timeline that followed. Appellant immediately initiated a formal dispute upon receiving the 4100R response in March 2024. Rather than standing on any purported finality of the 21-day window, Appellee accepted the dispute, initiating a 17-month internal review process that yielded seven (7) conflicting Resolution Letters between April 2024 and September 2025. Crucially, Appellant initiated only the first dispute, the final triggered by a regulatory complaint to the Federal Trade Commission. The intervening five Resolution Letters were reopened entirely by Appellee's own internal Relationship Management team after direct review of Appellant's accounting evidence. This record reflects an extensive, persistent effort by Appellant to resolve the accounting discrepancies, met not by a sequence of repetitive responses, but by a multi-year internal conflict where Appellee continually struggled to explain its own ledger.**

Appellant never sat on his rights or conceded the entry. Appellee's active, multi-year participation in the dispute waives any retroactive claim that the issue locked in April 2024. FRBP 3002.1 does not transform a moving-target ledger into an established fact. The core issue is not whether Appellant invoked a specific pre-closing motion, but whether the Bankruptcy Court committed legal error by granting a § 524(i) safe harbor based on a patently incomplete ledger that Appellee itself could not consistently explain.

## VIII. REVERSAL, NOT REMAND, IS THE APPROPRIATE REMEDY

This appeal does not present a situation in which additional proceedings are necessary to develop the record. The dispute arose as a contested matter under Rule 9014 and presented a narrow question concerning the validity of the delinquency asserted after discharge, the treatment of Plan-related payments, and Appellee's compliance with the requirements of § 524(i), the Stipulation, and Rule 3002.1.

Nor is this a case in which Appellee lacked an opportunity to explain or support its position. To the contrary, Appellee was afforded multiple opportunities through the Rule 3002.1 process, the post-discharge dispute process, seven Resolution Letters, the Notice of Default, ECF No. 71, the proceedings below, and this appeal. Each successive submission expanded upon Appellee's reconstruction and repeatedly omitted material transactions while leaving unresolved the same central disputes identified by Appellant from the outset and continually raised throughout these proceedings. The issue therefore is not the absence of additional evidence or explanation. The Bankruptcy Court's ruling ultimately rested upon the premise that identification of an alleged payment deficiency during the May 2020 Stipulation period, resolved days later, ended the inquiry and rendered § 524(i)'s safe harbor applicable. Because that premise bypassed the central disputes presented by Appellant's Motion and accepted Appellee's reconstruction without resolving those disputes, the error is not cured by permitting further reconstruction or additional explanation. The record already demonstrates the defect.

Accordingly, reversal is appropriate. Appellant respectfully submits that a remand for further proceedings would serve only to revisit issues that have

already been fully presented, repeatedly addressed, and extensively litigated throughout the Rule 3002.1 process, the proceedings below, and this appeal.

**IX. CONCLUSION**

The Bankruptcy Court narrowed the inquiry to whether an alleged payment deficiency could be identified at the outset of the Stipulation period and treated that issue as dispositive. In doing so, the Court accepted Appellee's later reconstruction without first determining whether the asserted delinquency had been validly established or could be reconciled with the account's administration during the Chapter 13 case. For these reasons, and for the reasons set forth in Appellant's Opening Brief and Prayer for Relief, Appellant respectfully requests that the Panel reverse the Bankruptcy Court's order and grant such further relief as the Panel deems appropriate.

Respectfully submitted,

Dated: June 19, 2026

/s/ Steven M. Moehling

Steven M. Moehling

Appellant, Pro Se

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. Bankr. P. 8015 and Ninth Circuit BAP Rule 8015(a)-1, I certify that this Reply Brief complies with the applicable type-volume limitations because the brief does not exceed 15 pages, excluding those portions exempted by rule.

The brief has been prepared in 14-point Times New Roman font.

Dated: June 19, 2026

/s/ Steven M. Moehling

Steven M. Moehling

Appellant, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on June 19, 2026, I electronically filed the foregoing Reply Brief with the Clerk of the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system, which will send notice of electronic filing to all registered CM/ECF users.

Dated: June 19, 2026

/s/ Steven M. Moehling

Steven M. Moehling

Appellant, Pro Se